# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                            No. CR 99-439 BB

MILLARD LACY and GREGORY
BERNARD LACY, a.k.a. Michael Lacy,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTIONS TO SUPPRESS

THIS MATTER having come before the Court on the motions of both Defendants to suppress. The Court having considered the briefs of the parties and held a combined evidentiary hearing on August 23, 1999, the Court FINDS both motions should be DENIED for differing reasons.

### Facts

On March 21, 1999, Defendants Gregory Bernard Lacy ("Gregory") and Millard Lacy ("Millard") reserved a room on the eastbound Amtrak train to leave Los Angeles the next day. Minutes before the train was to depart on March 22, both Defendants appeared and bought one-way, cash tickets to Denver. Task Force Officer ("TFO") Jonathan Salazar and Drug Enforcement Administration Agent Mickey Teague were notified Defendants were traveling on one-way, cash tickets.

The train arrived in Albuquerque at approximately 3:15 PM on March 23. Salazar approached the train attendant and asked for a description of the two individuals who were traveling in Room No. 3. Salazar was advised that the two Defendants were using two rooms due to the availability of an additional room (Rooms No. 3 and 4). Salazar observed the two men standing by the phone booth using the telephone. Approximately ten minutes later, one of the men, Millard, went to the sleeper car and boarded the train. Salazar approached Millard and after presenting his credentials asked for permission to talk to him. Millard agreed. Salazar asked Millard for identification and was presented with a California ID card in the name of Millard Bernard Lacy with a birth date of July 27, 1975. Salazar handed the card back to Millard and asked him if he had any luggage with him. Millard stated that he had luggage and a radio in his room. Salazar followed Millard to Room No. 3, which had an opened door but drawn curtain. Millard drew back the curtain and motioned with both hands toward the room. Salazar then explained to Millard his duties on the train and then asked for and received permission to search the luggage and the room. Salazar began to search a black duffel bag, which was on the top bunk.

The other man who later was identified as Gregory Lacy was observed approaching the room. Task Force Officer R.D. Sanchez presented his credentials, identified himself as a police officer, and asked for and received permission to talk to him. The man identified himself as Michael Lacy and presented identification in that name. The train ticket the subject presented was in the name of Gregory Mallard. Sanchez later learned that his name

2

was Greg, and that the two subjects were brothers. Sanchez then asked for and received permission to search Gregory's luggage. No contraband was located.

Both Sanchez and Gregory were in the hallway while Salazar searched Millard's belongings. No contraband was located in the black bag. Salazar then located a black radio, which was located in the room. When Salazar touched the radio he thought Millard became nervous. He observed him touching his head rapidly and shuffling his feet back and forth. Millard then asked for permission to get a drink of water and walked to the water cooler at the end of the hallway. He drank some water and came back. Salazar examined the radio and observed that the screws had tool marks on them. Salazar picked up one of the speakers and shook it and noticed a shift inside the speaker. Comparing it to the other speaker, he noticed a different feel. Salazar retrieved his own key chain screwdriver and tried to unscrew the back, but could not because of the depth of the screws. While looking into the back of the speaker, he was able to observe a striped cloth material. Salazar was able to pull some of this material through the slot in the back of the speaker, but it stuck. Salazar smelled the speaker box and identified a smell he associated with crack cocaine. Salazar asked Millard what was in the speaker and Millard said he did not know as he had borrowed the radio. The following colloquy recorded on the Officers' belt tapes then occurred:

> Salazar: Well what it is that when I pull it out, there's something in there like a ball or something inside where it won't come out. And I should have to break it, I should have to break it.
>
> Unknown: You're gonna have to.

3

> Salazar: You want to figure out what it is. Go ahead and break it open.
>
> Millard: Well, I don't want no one to mess up the radio, you know I want to listen to it.
>
> Salazar: Sure
>
> Gregory: Right.
>
> Sanchez: You have one speaker there I'd say just go ahead and he gave us permission already to break it open. See what the hell that is, that's not right.

Salazar then broke off a small square in the back portion of the speaker to reveal the contents. The material pulled out was a pair of boxer shorts, wrapped around two clear plastic cellophane bags containing an off-white substance. Salazar believed this substance to be crack cocaine and indeed it field tested as cocaine.

## Discussion

### Millard Lacy

Millard argues he did not give consent and the officers lacked probable cause to break open the radio. While the dialogue is equivocal, the Court must conclude Millard granted the officers permission to open the back of the radio as long as they did not destroy it's ability to operate. The unequivocal testimony of TFO Sanchez, which seems to be supported by the tape, was to the effect that Millard nodded yes when asked if the officers could break open the back of the radio speaker. Nor did either Defendant object as Salazar broke off the back of the speaker. *See United States v. Pena*, 143 F.3d 1363, 1368 (10th Cir.), *cert. denied*, 119 S. Ct. 236 (1998); *United States v. Dewitt*, 946 F.2d 1497, 1501 (10th Cir.

1991); *United States v. Martel-Martines*, 988 F.2d 855, 858 (8th Cir. 1993). Evidence uncovered in the scope of a search to which a defendant consents is admissible. *United States v. Benally*, 146 F.3d 1232, 1240 (10th Cir. 1998).

Millard's motion must be Denied.

Gregory Lacy

This is a difficult factual pattern. The Tenth Circuit's opinion in *United States v. Dozal*, 173 F.3d 787 (10th Cir. 1999), provides this Court two important standards to begin this discussion:

> An officer has probable cause to arrest if, under the totality of circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested (quoting *United States v. Guerrero-Hernandez*, 95 F.3d 983, 986 (10th Cir. 1996). Although probable cause need not be based on facts sufficient for a finding of guilt, it requires more than mere suspicion. Association with persons suspected of criminal conduct or nearness to the site of illegal activity does not alone suffice. (Citation and internal quotation marks omitted.)

*Dozal*, 173 F.3d at 792.

As stated above, in the probable cause determination, the Court looks at the totality of the circumstances of each particular case. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) (probable cause rests on a reasonable probability that a crime has been committed, not on certainty that illegal activity is afoot). The Tenth Circuit has repeatedly held that "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable

5

cause." *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Therefore, Gregory's association with Millard, without more, will not allow the officers' reasonable suspicion to rise to a level of probable cause. *See United States v. Patrick*, 899 F.2d 169, 175 (2d Cir. 1990) (numerous citations supporting the rule that physical proximity with one known to be in possession of narcotics is insufficient to establish probable cause). However, where there are facts in addition to one's association with someone engaged in criminal activity, the Court must consider whether the "totality of circumstance" established probable cause. *Vazquez-Pulido.* 155 F.3d at 1216-17 (citing *United States v. Hillison*, 733 F.2d 692 (9th Cir. 1984) ("In order to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown."))

While it is clear therefore that Gregory's relationship and proximity to Millard is alone insufficient to establish probable cause, in this case the totality of the circumstances tip the balance. Like Millard, with whom he shared a room, Gregory bought a one-way, cash ticket from a source city. *See United States v. Taylor*, 956 F.2d 572, 578 (6th Cir. 1992); *United States v. Tartaglia*, 864 F.2d 837, 841-42 (D.C. Cir. 1989). More damning, however, is the fact Gregory tried to conceal his identity. *See United States v. Candelaria-Silva*, 162 F.3d 698 (1st Cir. 1998); *United States v. Levy*, 865 F.2d 551, 558 (3d Cir. 1989). Since it is illegal in New Mexico to conceal one's true name or identity, this contributes to probable cause. NMSA § 30-22-3 (1994 Repl. Pamp.); *cf. Nagol v. State of New Mexico*, 923 F. Supp.

6

190 (D.N.M. 1996) (police officer did not violate arrestee's rights by arresting him for failure to provide proper identification).

Gregory's motion must likewise be Denied.

## **O R D E R**

For the above stated reasons, each of Defendants' motions to suppress must be and are hereby **DENIED**.

Dated at Albuquerque this 3d day of September, 1999.

                                                  **BRUCE D. BLACK**
                                                  United States District Judge

Counsel for Plaintiff:
    Rhonda P. Backinoff, AUSA, Albuquerque, NM

Counsel for Defendants:
    Todd Hotchkiss, Frechette & Assoc., Albuquerque, NM
    Armando Torres, Los Lunas, NM